IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1783 and 22-2055

THOMAS J. KAIRYS,
Appellee,

v.

SOUTHERN PINES TRUCKING, INC.
Appellant.

_____

**BRIEF OF APPELLEE, THOMAS J. KAIRYS**

_____

APPEAL FROM JUDGMENT DATED MARCH 31, 2022 AND
AWARD OF ATTORNEYS' FEES DATED MAY 9, 2022
IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA
AT CIVIL ACTION NO. 2-19-cv-01031

_____

Christine T. Elzer
Pa. I.D. No. 208157
Tamra Van Hausen
Pa. I.D. No. 330577
Elzer Law Firm, LLC
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 230-8436

Attorneys for Appellee

# TABLE OF CONTENTS

Table of Citations...................................................................v

I. Counterstatement of Scope of Review and Standard of Review .....................1

    A. ERISA Section 510 Judgment................................................1

    B. Award of Attorneys' Fees ................................................2

II. Counterstatement of Questions Involved.................................................3

III. Counterstatement of the Case ......................................................5

    A. Brief Factual Summary .................................................5

    B. The District Court's Factual Findings...................................5

        1. Liability .........................................................5

        2. Equitable Relief ...............................................11

        3. Attorneys' Fees ..............................................12

IV. Summary of Argument ...............................................................14

V. Argument……………………………………………………………………..18

    A. SPT Has Forfeited or Waived Most of its Arguments ......................18

        1. SPT has waived the argument that the evidence was legally insufficient to support judgment in Kairys' favor..........................19

        2. SPT has forfeited the argument that the District Court was bound by the jury's verdict ......................................................20

        3. SPT has forfeited the right to challenge remedies ........................21

        4. No exceptional circumstances justify considering SPT's forfeited or waived argument arguments .....................................22

B. The District Court Did Not Err in Finding that Kairys' Past Use and Intended Future Use of ERISA Benefits Were Determinative Factors in SPT's Decision to Fire Him ........................................................23

1. The District Court was the factfinder on the ERISA claims and was free to reject the advisory jury's findings ......................................23

2. The District Court's factual findings were not clearly erroneous. .........................................................................24

   a. The District Court generally found CEO Gallagher not to be a credible witness......................................................... 25

   b. The District Court believed that CEO Gallagher was upset about the cost of Kairys' surgery..............................................27

   c. The District Court appropriately drew reasonable inferences from circumstantial evidence about the health insurance invoices ....................................................................28

3. The District Court's legal conclusions were supported by the evidence. ......................................................................30

   a. The District Court found SPT's reasons implausible.........32

   b. The District Court found SPT changed its reason.............33

   c. The District Court found evidence of antagonism............33

   d. The District Court found evidence of deviation from standard procedure...............................................................34

   e. The District Court found evidence of discrimination in SPT's subsequent hiring of Kyle Kunkle.. ..........................35

   f. The District Court properly found that SPT attributed rising healthcare costs to Kairys………………………….……36

g. The District Court identified a close temporal proximity………………………………………….……37

C. The Jury's Age and Disability Discrimination Verdicts Did Not Preclude the District Court From Finding in Kairys' Favor Under ERISA. ....................................................................................38

1. Kairys' Age, Disability, and ERISA Claims Involved Different Legal Standards. ..........................................................41

a. An ERISA interference claim is distinct from an age or disability discrimination claim…………………………………………..42

b. An ERISA retaliation claim is distinct from an age or disability discrimination claim…………………………………………44

2. The Precise Basis for the Jury's Verdict is Unclear……………..45

D. The District Court Did Not Err in Awarding Front Pay. ..................47

E. The District Court Did Not Abuse its Discretion in Awarding Attorneys' Fees. ..................................................................................48

1. The District Court did not abuse its discretion in reducing pre-verdict fees by 25%........................................................................48

2. The District Court did not abuse its discretion in declining to reduce fees for ERISA briefing. …………………………………………51

3. SPT's specific challenges to fees and expenses are unfounded…...52

a. Counsel's time entries were sufficiently detailed…………52

b. Work related to Kyle Kunkle was compensable…………..53

c. Counsel's work was not unreasonably duplicative………..53

d. No further reduction is warranted for the expense subclaim…………………………………………………...54

e. The District Court did not abuse its discretion in awarding expenses……………………………………………………..54

4. An award of fees was appropriate under the WPCL and contract claims…………………………………………………………….55

VI. Conclusion ....................................................................................56

Certificate of Bar Membership ......................................................57

Certificate of Compliance with Fed. R. App. P. 32(a) ..................58

Certificate of Virus Scan/Certificate of Identical Copies .............59

Certificate of Service .....................................................................60

# TABLE OF CITATIONS

## Cases

*Abramson v. Wm. Patterson Coll. of NJ*, 260 F.3d 265 (3d Cir. 2001) .................33

*Anderson v. City of Bessemer, N.C.*, 470 U.S. 564 (1985) ......................1, 5, 25, 27

*Andrews v. City of Phila.*, 895 F.2d 1469 (3d Cir. 1990) ................................41, 42

*Armbruster v. Unisys Corp.*, 32 F.3d 768 (3d Cir. 1994) ......................................36

*AstenJohnson, Inc. v. Columbia Gas Co.*,
562 F.3d 213 (3d Cir. 2009) …………………………………………………… 38, 39

*Barna v. Bd. of Dir. of Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017)............................................................................. 18, 22

*Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990) ................................31

*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001) ....................................22

*Caben-Wheeler v. Elsea*, 71 F.3d 837 (11th Cir. 1996) .........................................41

*Colgan v. Fisher Scientific Co.*, 935 F.2d 1407 (3d Cir. 1991)……………………34

*Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988)....................................23

*Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514 (3d Cir. 1997) …………..28, 29

*DiFederico v. Rolm Co.*, 201 F.3d 200 (3d Cir. 2000) ..........................................31

*Eichenlaub v. Township of Indiana*, 214 Fed. Appx. 218 (3d Cir. 2007) ..............50

*Eichorn v. AT&T Corp.*, 484 F.3d 644 (3d Cir. 2007) ...........................................23

*Farrell v. Planters Lifesavers Co.*,
206 F.3d 271, 279 (3d Cir. 2000) ...............................................................31, 33, 37

*Fowler v. Land Mgmt. Gp., Inc.*, 978 F.2d 158 (4th Cir. 1992) ..............................41

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ..........................................32, 33, 35

*Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009) .......................................................36

*Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300 (3d Cir. 2008) ..............49

*Hayes v. Comm. Gen. Osteopathic Hosp.*, 940 F.2d 54 (3d Cir. 1991)...............1, 24

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). ......................................................48, 49

*Hirsch v. National Mall & Service, Inc.*, 989 F. Supp. 977 (N.D. Ill. 1997) .........36

*Hoxworth v. Blinder, Robinson, & Co., Inc.,* 903 F.2d 186 (3d Cir. 1990) .....47, 48

*In re Diet Drugs Prod. Liability Litig.*, 706 F.3d 217 (3d Cir. 2013)......................18

*Kowalski v. L&F Prods., Inc.*, 82 F.2d 1283, 1289 (3d Cir. 1996)……………31, 37

*Lichtenstein v. UPMC*, 691 F.3d 294 (3d Cir. 2012) .............................................31

*Mahler v. Community Coll. of Beaver County*, 43 F. Supp. 3d 495
(W.D. Pa. 2014) ....................................................................................................35

*Marra v. Phila. Hous. Auth.*, 497 F.3d 286 (3d Cir. 2007) ...................................33

*McCutcheon v. America's Servicing Co.*, 560 F.3d 143 (3d Cir. 2009)...............1, 2

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................28

*Moody v. Atlantic City Bd. of Edu.*, 870 F.3d 206 (3d Cir. 2017). ........................41

*Moore v. City of Phila.*, 461 F.3d 331, 345 (3d Cir. 2006)………………………..33

*Oberneder v. Link Computer Corp.*, 674 A.2d 720 (Pa. Super. Ct. 1996)…………55

*Perdoni Bros., Inc. v. Concrete Sys., Inc.*, 35 F.3d 1 (1st Cir. 1994)………………41

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) ..............................................28

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) ..................................28

*Rode v. Dellacripete*, 892 F.2d 1177 (3d Cir. 1990) ...............................................53

*Romero v. Allstate Ins. Co.*, 2016 WL 2595102
(E.D. Pa. May 3, 2016) .......................................................................39, 40, 41, 47

*Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998) ............................33

*Stein v. Atlas Indus., Inc.*, 730 Fed. Appx. 313 (6th Cir. 2018) ..............................36

*Stewart v. Rutgers, The State Univ.*, 120 F.3d 426 (3d Cir. 1997) .........................34

*Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 Fed. Appx. 93 (3d Cir. 2006) ......50

*Torre v. Casino, Inc.*, 42 F.3d 825 (3d Cir. 1994) ............................................35, 46

*Trujillo v. PacifiCorp,* 524 F.3d 1149, 1156 (10th Cir. 2008) ..........................36, 37

*United States v. Anthony Dell'Aquilla, Ent. & Sub.*,
150 F.3d 331 (3d Cir. 1998).......................................................................22

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1992).........................................12

*Waldron v. SL Indus., Inc.*, 56 F.3d 491 (3d Cir. 1995)…………………………35, 46

*Washington v. Phila. County Ct. of Common Pleas*,
89 F.3d 1031 (3d Cir. 1996)…………………………………………………………..2

## Statutes

29 U.S.C. § 623..................................................................................................42, 43

29 U.S.C. § 1140........................................................................ 11, 30, 42, 43, 44

42 U.S.C. § 12112..............................................................................................42, 43

43 Pa. Cons. Stat. § 260.1 .........................................................................................9

43 Pa. Con. Stat. § 260.9a .................................................................. 55

43 Pa. Cons. Stat. § 955. .................................................................. 42

## Rules

Fed. R. Civ. P. 50………………………………………………………19

Fed. R. Civ. P. 52. ..................................................................1, 5, 20, 24

Fed. R. Civ. P. 59. .................................................................. 20

Fed. R. Evid. 801. .................................................................. 27

## I. Counterstatement of Scope of Review and Standard of Review

### A. ERISA Section 510 Judgment

When a District Court proceeds over a nonjury trial, this Court reviews its findings of fact for clear error, and its conclusions of law *de novo*. *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009); *see also* Fed. R. Civ. P. 52(a)(6)("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility").

"A trial court has full discretion to accept or reject the findings of an advisory jury." *Hayes v. Comm. Gen. Osteopathic Hosp.*, 940 F.2d 54, 57 (3d Cir. 1991). "If it rejects such findings, on appeal its findings of fact are to be reviewed *as if there was no advisory jury recommendation*." *Id.* (emphasis added). Even when an advisory jury is involved, this Court's review is limited to whether District Court's factual findings were clearly erroneous. *Id.*

A finding is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985)(citation omitted). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id.* "Where there are two permissible

views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

## B. Award of Attorneys' Fees

This Court reviews a district court's determination of an award of attorneys' fees for abuse of discretion. *McCutcheon*, 560 F.3d at 147. "The appellate court may not upset a trial court's exercise of discretion on the basis of a visceral disagreement with the lower court's decision. Similarly, the appellate court may not reverse where the trial court employs correct standards and procedures, and makes findings of fact not clearly erroneous." *Washington v. Phila. County Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)(citations omitted).

## II. Counterstatement of Questions Involved

1. Whether Appellant's argument regarding the alleged legal insufficiency of evidence is properly before this Court, when it failed to move for judgment as a matter of law at the close of the evidence or to otherwise challenge the legal sufficiency of the evidence before filing this appeal?

**Suggested Answer: No.**

    a. If Yes: Whether the District Court committed clear error in finding in favor of an employee/plan participant in an ERISA interference and retaliation claim, when it made credibility determinations and drew inferences in the employee's favor in determining that his past use, and intended future use, of ERISA benefits were determinative factors in his termination?

    **Suggested Answer: No.**

2. Whether the Appellant has properly preserved for appeal its contention that the District Court was bound in its nonjury ERISA judgment by the jury's verdict as to age and disability discrimination claims, when Appellant conceded below that the District Court was *not* bound by the jury's verdict, and argues differently for the first time on appeal?

**Suggested Answer: No.**

a. If YES: Whether a jury's verdict as to ADA and ADEA claims are binding on the District Court in an ERISA claim, when there is no right to a jury trial under ERISA, when ERISA applies different legal standards than the ADEA and ADA, and when the jury made no specific findings as to credibility or other material facts?

**Suggested Answer: No.**

3. Whether Appellant's challenge to remedies awarded by the District Court under ERISA is properly before this Court, when Appellant failed to brief remedies below, and challenged the award for the first time on appeal?

**Suggested Answer: No.**

4. Whether the District Court abused its discretion in awarding attorneys' fees, which included a reduction of approximately 25% of pre-verdict fees, in a case where the plaintiff prevailed on claims under ERISA Section 510 and under mandatory fee-shifting wage claims, but did not prevail on disability and age discrimination claims?

**Suggested Answer: No.**

### III. Counterstatement of the Case

#### A. Brief Factual Summary

Defendant-Appellee, Southern Pines Trucking, Inc. ("SPT"), fired its Vice President of Sales, Plaintiff-Appellant Thomas J. Kairys ("Kairys"), after he used SPT's self-funded health insurance for a hip replacement surgery, and before his planned use of that insurance for a second surgery. SPT fired Kairys just one week before the start of the new insurance plan year. SPT's Vice President of Operations, Bob Gallagher, told Kairys to "lay low" because his brother, Chief Executive Officer Patrick Gallagher, was upset about the cost of his surgery. SPT's insurance invoices for a six-month period reveal a highlighted employee, code-named "SP01," whose insurance costs were by far the highest of any employee that period. No one could explain where the highlighting came from.

While SPT claimed that it discharged Kairys in a simple position elimination, the company assigned some of Kairys' duties to a new employee less than two months later. SPT admitted that it needed another employee in the office to function after Kairys' termination.

#### B. The District Court's Factual Findings

#### 1. Liability

The District Court found the following facts, which this Court must accept unless clearly erroneous. *See* Fed. R. Civ. P. 52(a)(6); *Anderson*, 470 U.S. at 573.

Kairys served as SPT's Vice President of Sales from March 14, 2016 to April 23, 2018 (5a ¶1)(902a-903a; 339a lines 14-16). CEO Gallagher personally recruited Kairys for this position. His primary duty was to grow SPT's cryogenic trucking portfolio. *Id.*; 280a, lines 16-19. The vision for Kairys' position was long-term rather than temporary. *Id.*; 281a lines 6-14. During his employment, Kairys received a pay increase from $125,000 to $140,000 (6a ¶2; 1034a). He also received bonuses for "full utilization" of SPT's cryogenic trucks (6a ¶2; 902a; 308a line 11-309a line 9).

In 2016, Kairys was diagnosed with degenerative arthritis in both hips, and learned that he would need hip replacement surgery (6a ¶4; 312a line 17-313a line 6). In or around the summer of 2017, Kairys informed SPT representatives, including CEO Gallagher, that he would eventually need to have both hips replaced (7a ¶11; 327a lines 11-18). While Gallagher initially denied that he knew about the need for a second surgery, he "immediately backtracked" and admitted that he "vaguely remember[ed]" it (18a; 467a lines 7-18).

On November 6, 2017, Kairys notified his supervisor, Chad Vittone, about his upcoming surgery. Vittone responded that it was "no problem" (6a ¶4; 947a). On November 30, 2017, Kairys underwent his first hip replacement surgery, and missed some work as a result. *Id.* at ¶5; 322a line 17-323a line 10.

Kairys' medical expenses, including the above surgery, were covered under SPT's employee health insurance plan. *Id.* at ¶6. SPT's health plan was self-insured,

meaning it paid out of pocket for a portion of each claim made on the policy. *Id.* at ¶7; 1024a. SPT received invoices itemizing the cost of medical and pharmaceutical claims for its employees each week. *Id.* ¶7; 948a-998a. CEO Gallagher testified that he did not review these weekly invoices, but he reviewed the company's health insurance costs on an annual basis (6a-7a ¶8; 500a lines 7-20). From this testimony, the District Court inferred that Gallagher was generally aware of his companies' health plan expenses (6a-7a ¶8).

Kairys' costs—coded "SP01"—were highlighted on each insurance spreadsheet (7a ¶9; 948a-998a). The District Court concluded this meant Kairys' insurance costs "caught the attention of someone at the company." *Id.* It noted, "[i]t would not have been difficult to discover that 'SP01' was the line item for Kairys" (16a). The codes started with "P," "S," or "SP." *See* 948a-998a. "Common sense leads the Court to infer that the codes correspond with Pat Gallagher's three companies: 'PGT,' 'Sudbury,' and 'Southern Pines,' respectively" (16a). SPT only had three employees (16a-17a). Only 20 employees from all of CEO Gallagher's companies used the plan. *Id.*; 581a lines 12-19, 594a lines 16-18.[1] There were exactly 20 lines on each invoice spreadsheet. *See* 948a-998a.

---

[1] SPT claims that 300-600 people were on the plan (Appellant's Brief at 35). However, Director of Risk Management Vargo testified that only "a few people," "maybe 20 of our total population," were on the UPMC plan in which Kairys participated (581a, lines 12-16). The District Court clearly accepted this testimony.

Following Kairys' surgery, SPT incurred a spike in medical costs (7a). The claims paid the week of December 10-16, 2017, shortly after Kairys' surgery, amounted to $23,277.07, with $13,394.94 corresponding to "SP01" (17a; 960a). Claims were usually processed within a few weeks to a month after the service was rendered (591a, lines 1-11). According to the District Court, "it would not have been difficult to identify 'SP01' as Kairys and parse his expenses. Someone at Southern Pines highlighting the 'SP01' charges on each invoice suggests that Southern Pines did exactly that" (17a).

CEO Gallagher found out about Kairys' hip surgery and became upset (7a ¶10). After Kairys returned from his surgery-related leave, VP Bob Gallagher told Kairys that his brother, CEO Gallagher, was upset about the cost of the surgery, and advised him to "lay low."[2] *Id*.; 320a lines 3-13. The District Court found this testimony credible. *Id.*

On April 23, 2018, SPT terminated Kairys' employment (7a ¶12; 339a lines 14-16). "This occurred right around the end of the benefits calendar year – which was May 1." *Id.*; 575a lines 8-12. Kairys did not receive any advance notice, and his employment ended immediately. *Id.*

---

[2] SPT claims this conversation occurred 17 months before Kairys' termination (Appellant's Brief at 22-23). However, it occurred after Kairys returned from having surgery in December 2017, *see* 320a, and thus was approximately 4 months before his termination.

CEO Gallagher decided to fire Kairys unilaterally (7a ¶12). The District Court noted that "the procedure of this termination was unusual" (13a). Gallagher did not consult anyone before deciding to fire Kairys. *Id.*; 1046a.[3] He did not review any documents, either (13a; 1019a). The only other examples Gallagher gave where he made a unilateral termination decision involved firing employees for stealing or for poor performance. *Id.*; 489a, lines 8-17. Notably, "there is no claim that Mr. Kairys committed any misconduct or even that he performed inadequately. Quite the opposite" (13a; 503a, lines 6-12). Kairys even earned a bonus the week before he was fired (13a; 1001a).

During Kairys' termination meeting, SPT representatives asked him to sign a severance agreement that included a release. *Id.*, 224a lines 1-8. This was despite SPT agreeing at the time of Kairys' hire that it would pay him a severance of one week of salary for each year worked, without needing to sign a release (ECF 52-10 ¶1).[4]

---

[3] Kairys played a video at trial of excerpts of Gallagher's deposition testimony, but the court reporter did not transcribe it. *See* 265a, line 11. The entirety of those video excerpts appears in the Appendix at 1036a-1050a.

[4] The District Court granted Kairys partial summary judgment on his breach of contract claim as to liability only, finding that SPT breached the contract providing for a severance as a matter of law. *See* ECF 79 and 80. The jury then found in Kairys' favor on his claims for breach of contract and under the Wage Payment and Collection Law (WPCL), 43 Pa. Cons. Stat. § 260.1 *et seq.*, finding that SPT failed to prove that it denied the severance in good faith, and that it was not entitled to any offset. *See* 755a. SPT does not appeal these determinations.

Gallagher knew that Kairys' termination might result in legal trouble. Still, he said "we will not give ground on this" (7a¶13; 1013a).

Less than two months after Kairys' termination, Kyle Kunkle began working for SPT "as part of a hybrid rotation with PGT Trucking," a "sister company" of SPT (8a ¶14; 14a; 1015a). Some of Kunkle's duties overlapped with Kairys' role. *Id.*; 1016a-1017a; 293a line 1-294a line 10. Specifically, Kunkle and Kairys both performed operations work, as well as "sales maintenance," such as attending sporting events with clients (14a; 294a, lines 11-23; 403a line 8-404a-line 3). Moreover, Gallagher claimed Kunkle was at SPT so it "would at least have a warm body over there to answer the phone." *Id.*; 503a lines 16-18. Thus, SPT "clearly needed a third employee to function" (14a).

According to Gallagher, Kunkle was to learn the operations of the business so he could become a better salesman (14a; 484a lines 7-14). As Gallagher explained, "to be a salesman… you have to go through operations. Because if you don't understand how it works, you can't sell." *Id.*; 483a lines 20-22. The District Court found that Gallagher "refused to apply his own logic" in this case, given that Kairys was "already well-versed in Southern Pines's operations during his tenure," yet he failed to retain Kairys to do operations work (14a).

Applying the above facts, the District Court concluded "the preponderance of the evidence ultimately shows retaliation for use of benefits, and/or specific intent

to prevent future use of benefits," in violation of Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.  *See* 18a, 4a, 11a.

### 2. Equitable Relief

Despite diligently searching for new employment, Kairys did not find a job for nine months (8a ¶15; 345a, lines 24-2; 1030a). Kairys' base salary at SPT was $140,000, while his base salary for his new position was $132,500. *Id.*; 1034a, 1032a. While SPT provided a car allowance of $1,000 per month, his new position provided a car allowance of $500 per month. *Id.*; 1012 and 1032a. Kairys also earned smaller bonuses with his new position, "though the bonus differential was not quantified with precision." *Id.*

The District Court found that reinstatement was "not a viable option" in this case, given "strong animosity" between the parties, as evidenced by Kairys' great mental anguish as well as Gallagher's immediate declaration that "we will not give ground on this" and refusal to pay a severance for nearly four years. *See* 19a-20a and n. 7. Moreover, there was no open position at SPT (20a).

Given that reinstatement was not feasible, the District Court awarded front pay (20a). Balancing Kairys' "track record" of spending one to seven years at each of his past jobs, the nature of the industry, and Kairys' advancing years and expressed desire for stability, the Court found that five years of front pay was appropriate (22a). The Court opted to award the difference in Kairys' base salary

and car allowance between SPT and his new employer, while declining to award any front pay to account for lost bonuses (22a-23a).

### 3. Attorneys' Fees

Applying the factors under *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1992) for an award of attorneys' fees under ERISA, the District Court found fees were warranted because: (1) SPT was culpable "because it retaliated against Mr. Kairys for using his health benefits and interfered specifically to prevent him from using additional benefits;" (2) "the business was presented as profitable with ongoing operations and significant assets"; (3) an "award of fees will chill future temptations to interfere with ERISA benefits to save money," given SPT's "cost-averseness" and the lack of availability of compensatory and punitive damages; and (4) the merits of SPT's defense were "weak at best" (24a-25a).

The District Court further found that Kairys' counsel's billing entries were "sufficiently specific and detailed to support the fee award requested," and that their hourly rates were "well-supported and reflective of the market rate" (44a-45a).

The District Court also found "the evidence presented did overlap between the successful [ERISA, breach of contract, and WPCL] and unsuccessful [Americans with Disabilities Act (ADA), Age Discrimination in Employment Act (ADEA), and Pennsylvania Human Relations Act (PHRA)] claims, since all the claims had a 'common core of facts' and were 'based on related legal theories'" of discrimination

and pretext (45a). The District Court therefore exercised its discretion to reduce pre-verdict fees by approximately 25%, and not to reduce post-verdict fees at all (45a-46a).

## IV. Summary of Argument

This Court should affirm the District Court's judgment that SPT violated Section 510 of ERISA by firing Kairys in retaliation for his use of ERISA-protected benefits, and to interfere with his future use of those benefits. It should also affirm the District Court's decision granting Kairys reasonable attorneys' fees based on his successful pursuit of claims under ERISA, the WPCL, and for breach of contract.

At the outset, SPT has waived or forfeited all the arguments it raises related to ERISA liability and remedies. While it now challenges the sufficiency of the evidence, it failed to move for judgment as a matter of law at any time after it called three witnesses at trial. While it now claims the District Court was bound in its ERISA determination by the jury's verdicts on Kairys' age and disability discrimination claims, it admitted to the District Court that it was *not* bound by the jury's verdict. While SPT now half-heartedly challenges the District Court's award of front pay, it failed to address remedies at all before this appeal, despite the Judge's suggestion on the record to brief remedies. SPT does not even acknowledge its waiver or forfeiture, much less explain why exceptional circumstances warrant appellate review of these unpreserved arguments. As such, this Court can dispense with all of SPT's arguments other than with respect to attorneys' fees on the grounds of waiver and forfeiture alone.

Should the Court wish to consider the merits of SPT's argument about the

legal sufficiency of the evidence despite its waiver, the Court should still affirm the District Court's determination that SPT fired Kairys in violation of ERISA. Because the District Court was the factfinder on Kairys' ERISA interference and retaliation claims, this Court must not disturb its factual findings unless they were clearly erroneous. Here, the District Court's findings were well-supported by the evidence. They were based largely on credibility determinations and permissible inferences drawn from circumstantial evidence. The District Court then appropriately applied the law to its factual findings and determined that SPT's proffered reason for firing Kairys was pretextual, and that the real determinative reason for his termination was retaliation for his past use of ERISA benefits, as well as interference with his future use of benefits. The District Court relied on the same types of evidence that this Court has routinely held can lead a reasonable factfinder to find discrimination or retaliation, such as changing reasons, deviation from standard procedure, temporal proximity, and other inconsistencies.

If this Court wishes to consider SPT's belated argument that the District Court was bound in its ERISA determination by the jury's verdict as to Kairys' age and disability discrimination claims, the Court should reject this argument on the merits. First, Kairys' ERISA interference and retaliation claims apply different legal standards from his age and disability discrimination claims. The prohibition on interference with a plan participant's use of benefits in the future, and on retaliation

for use of those benefits in the past, are uniquely ERISA concepts. Kairys' status as a disabled individual, and as an employee over the age of 40, are separate and apart from his additional rights to exercise ERISA benefits without interference or retaliation. It does not necessarily follow that a person who was not fired because of his age or disability *also* was not fired as a means of interfering with, or retaliating for, the use of ERISA benefits. Second, the jury made no specific factual findings. While SPT claims the jury drew credibility determinations in its favor, the record does not support this contention. To the contrary, the jury was not asked which testimony it believed or disbelieved, nor was it asked which inferences it drew from the evidence. Those determinations were within the province of the District Court as the factfinder on Kairys' ERISA claims.

SPT barely challenges the District Court's award of front pay at all. Essentially, it claims that Kairys should receive no remedies because he should lose his ERISA claims. If the Court disagrees with SPT and affirms the finding of liability in Kairys' favor, then SPT has not preserved any substantive objection to the front pay award.

SPT's challenge to the District Court's award of attorneys' fees is nothing more than dissatisfaction with the Court's proper exercise of its discretion. The District Court did not abuse its discretion in reducing pre-verdict fees by 25% in consideration of (1) Kairys' success on his ERISA and wage-based fee-shifting

claims; (2) his loss of his age and disability discrimination claims; and (3) the common core of facts between the successful and unsuccessful claims. The remainder of SPT's challenges to the District Court's award of fees amount to trivial grievances, such as claiming no fees should have been awarded for work with respect to a comparator who was referenced extensively by the Court in finding in Kairys' favor; challenging an entry for about two hours of document review that does not reference the specific documents reviewed; and even disputing the award of a filing fee that the record shows Kairys paid. The District Court acted well within its discretion in awarding these fees, and as such, should be affirmed.

## V. Argument

### A. SPT Has Forfeited or Waived Most of Its Arguments.

Parties are expected to preserve issues at the trial court level before raising

them on appeal. The rules requiring preservation of issues serve "important judicial

interests," including promoting finality, protecting litigants from unfair surprise, and

protecting trial courts from "expending time to consider and resolve arguments

advanced by counsel only to be 'reversed on grounds that were never urged or

argued.'" *See Barna v. Bd. of Sch. Dir. of Panther Valley Sch. Dist.*, 877 F.3d 136,

146 (3d Cir. 2017)(citation omitted).

As such, absent exceptional circumstances, this Court will not consider

arguments that a party has waived or forfeited. *See In re Diet Drugs Prod. Liability

Litig.*, 706 F.3d 217, 226 (3d Cir. 2013); *Barna*, 877 F.3d at 146-47. Waiver is the

"'intentional relinquishment or abandonment of a known right.'" *Barna*, 877 F.3d at

147 (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993). Forfeiture, on the other hand,

is "'the failure to make the timely assertion of a right,' an example of which is an

inadvertent failure to raise an argument." *Id.*

Here, most of SPT's arguments are brand new. They were never raised in any

manner during or after the trial. Rather, they have been raised for the first time on

appeal. One argument, regarding alleged entitlement to judgment as a matter of law,

was originally raised, but then not preserved. As further explained below, the Court

should not consider the following issues on grounds of forfeiture or waiver alone.

### 1. SPT has waived the argument that the evidence was legally insufficient to support judgment in Kairys' favor.

In arguing to the District Court that it should find in its favor on Kairys'

ERISA claim, SPT did not contend that it was entitled to judgment as a matter of

law. Instead, SPT only claimed that the District Court *should* find facts leading to

the conclusion that it did not violate ERISA—*not* that the evidence was legally

insufficient for Kairys to prevail. In so arguing before the District Court, SPT

repeatedly argued about the credibility of witnesses, as opposed to any legal

deficiency. *See* 745a 746a, 750a. Now, however, SPT argues that the "trial evidence

was insufficient to support the District Court's grant of Kairys' ERISA claim."

Appellant's Brief at 745a.

SPT has waived this argument. While it argued that it was entitled to judgment

as a matter of law pursuant to Fed. R. Civ. P. 50 at the close of Kairys' case in chief,

*see* 438a, it failed to renew this motion after the close of *all* the evidence. *See* 605a

(noting that SPT rested); 609a-623a (containing argument on Kairys' Rule 50

motion, but no argument from SPT renewing its own motion).

Notably, SPT called CEO Pat Gallagher, Director of Risk Management Paul

Vargo, and Vice President of Operations Bob Gallagher after its Rule 50 motion.

The District Court relied heavily on CEO Gallagher and Vargo's testimony in

finding in Kairys' favor. *See generally* 6a-7a, 11a-18a. SPT has never before claimed that the full record, including these witnesses' testimony, was legally insufficient to sustain a judgment for Kairys. Not only did SPT fail to raise this argument at the close of the evidence, but it also failed to argue in its posttrial ERISA Brief that the evidence was legally insufficient. *See* 740a-751a.

Moreover, following the District Court's judgment on the ERISA claim, SPT failed to move for amended or additional findings under Fed. R. Civ. P. 52(b), or for a new trial under Fed. R. Civ. P. 59(a)(2). As such, SPT has waived its argument that it is entitled to judgment based on insufficiency of the evidence.

### 2. SPT has forfeited the argument that the District Court was bound by the jury's verdict.

For the first time on appeal, SPT claims that the jury's verdict against Kairys' age and disability discrimination claims mandated that the Judge find against him on his ERISA claims. *See* Appellant's Brief at 39-43. Before the District Court, on the other hand, SPT conceded that the Judge was "***not bound***" by the advisory jury's verdict (741a, 744a)(emphasis added). Indeed, SPT explicitly acknowledged that "a district court makes ***its own*** findings of fact and conclusions of law based upon its assessment of the trial evidence, and the jury's advisory findings ***if the court chooses***" (744a)(emphasis added).

In short, SPT argued that the District Court ***should*** find against Kairys on his ERISA claim as the advisory jury recommended, ***not*** that it was ***required*** to do so.

*See also* 746a ("This Court should adopt the jury's advisory verdict as permitted by Fed.R.Civ.P. 39" and "This Court's own evaluation of the evidence will show that Kairys failed to prove the elements of his ERISA claim"); 751a ("This Court is requested to conclude that Kairys failed to establish his claim for ERISA retaliation"). Indeed, SPT argued to the District Court that the jury's determination in its favor on the age and disability discrimination claims was "persuasive," *see* 746a, *not* that it was binding.

Now, however, SPT claims "the District Court was **bound** by the jury's factual determinations on the common evidence and intertwined issues, but erroneously substituted its own contradictory factual findings." Appellant's Brief at 42-43. Not only did SPT fail to raise this argument in any way before the District Court, but it failed to even cite any of the cases upon which it now relies for this proposition. *Contrast* Appellant's Brief at 39-43 *with* 740a-751a. As such, SPT did not even arguably preserve this argument for appeal.

### 3. SPT has forfeited the right to challenge remedies.

The District Court explicitly suggested on the record at the close of the trial that the Parties brief the issue of ERISA remedies (708a). SPT inexplicably failed to do so in its ERISA Brief. *See* 740a-751a. Moreover, after reviewing Kairys' ERISA Brief, which discussed remedies at length, *see* 731a-736a, SPT did not seek leave to file a response or to otherwise preserve its right to challenge remedies in any way.

Once the District Court awarded Kairys front pay under ERISA, SPT again failed to move for amended or additional findings under Rule 52(b).

Now, in a throwaway sentence, SPT claims "Kairys was not entitled to an award of front pay, much less in the amount of $13,500 per year for a five year period, totaling $67,500" (Appellant's Brief at 43). Not only did SPT fail to preserve this argument at the appropriate time, but it fails to develop it even now. Therefore, SPT has forfeited any challenge to the Court's award of remedies.

### 4. No exceptional circumstances justify considering SPT's forfeited or waived argument arguments.

No exceptional circumstances apply that would compel this Court to consider SPT's forfeited or waived arguments. For example, the case does not involve qualified immunity, as was the case in *Barna*, 877 F.3d at 149. Moreover, the majority of SPT's arguments, while characterized as assertions of legal errors, are highly fact-specific in nature.

Declining to address SPT's belated arguments would not result in harm to the public interest or a manifest injustice. *See id.* Notably, this Court has refused to address forfeited arguments that present greater public interest concerns than this case, such as alleged violations of the Clean Air Act, *see United States v. Anthony Dell'Aquila, Ent. & Sub.*, 150 F.3d 329, 331 (3d Cir. 1998), and claims of a racially-segregated market exploitation in the advertising of tobacco products. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001). This case, on the other hand,

involves an ERISA dispute between a single employee and a single employer, resulting in an award of $67,500 plus attorneys' fees. As such, there is no compelling reason for the Court to consider SPT's forfeited and waived arguments.

If the Court declines to consider SPT's forfeited and waived arguments, this would dispose of most of this appeal. The only issue left would be evaluating the District Court's award of attorneys' fees for abuse of discretion. While Kairys will address the substance of SPT's other arguments for the sake of completeness, he urges the Court not to consider any arguments related to ERISA liability or front pay because they have been forfeited or waived.

## B. The District Court Did Not Err in Finding that Kairys' Past Use and Intended Future Use of ERISA Benefits Were Determinative Factors in SPT's Decision to Fire Him.

As noted above, SPT has waived any challenge to the legal sufficiency of the evidence. However, should the Court wish to consider this argument, it should reject it on the merits. SPT appears to take issue with both the District Court's factual findings as well as its legal conclusions. SPT is wrong on both counts.

### 1. The District Court was the factfinder on the ERISA claims and was free to reject the advisory jury's findings.

ERISA claims are equitable in nature, and do not provide the right to trial by jury. *See Cox v. Keystone Carbon Co.*, 861 F.2d 390, 393 (3d Cir. 1988); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 652 (3d Cir. 2007). Given the lack of a right to a jury trial for ERISA 510 claims, the jury's verdict on that claim was purely advisory. *See*

4a, 742a (noting the parties' agreement before trial that the jury's ERISA verdict was advisory).

"A trial court has full discretion to accept or reject the findings of an advisory jury." *Hayes*, 940 F.2d at 57. **"If it rejects such findings, on appeal its findings of fact are to be reviewed as if there was no advisory jury recommendation."** *Id.* (emphasis added). When a judge rejects an advisory jury's findings, no "heightened scrutiny" beyond the "clearly erroneous" standard applies. *Id*. A trial court is not even required to "explain its divergence from" an advisory verdict. *Id.*

Thus, in reviewing the District Court's factual findings, this Court should give no weight whatsoever to the jury's advisory verdict as to Kairys' ERISA claim. As such, SPT's repeated references to the jury's advisory verdict on the ERISA claim are inappropriate. *See* Appellant's Brief at 34, 38, 42. This Court should treat the advisory verdict as if it did not exist. *Hayes*, 940 F.2d at 57. Instead, the Court should only assess whether the District Court's independent assessment of the facts was clearly erroneous. *See id.*; Fed. R. Civ. P. 52(a).

**2. The District Court's factual findings were not clearly erroneous.**

At bottom, SPT's challenge to the District Court's factual findings amounts to a disagreement with its credibility determinations. As explained below, this dispute falls far short of the "clearly erroneous" threshold required to overturn the District Court's findings of fact.

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. Rather, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." *Id.* at 575.

Here, the District Court appropriately chose between two permissible views of the evidence, and carefully explained the rationale for its credibility determinations. Some examples appear below.

### a. The District Court generally found CEO Gallagher not to be a credible witness.

The District Court clearly disbelieved CEO Pat Gallagher regarding multiple material facts. For example, the Court noted that Gallagher claimed, for the first time at trial, that a shortage of hazmat-certified drivers factored into his decision to fire Kairys (12a). The Court characterized this testimony as "evasive" and "lacking in credibility," pointing out that he testified on direct examination that the considered the driver shortage, and then answering "no" and "that's an assumption, counselor" when asked about the same issue on cross-examination (12a). *Contrast* 476a, lines 4-8 *with* 477a, lines 12-25 and 491a, line 22- 492a, line 25.

The District Court again called Gallagher's testimony "evasive" on cross with respect to his explanation of the sales-operations connection that he described on direct (14a). Specifically, Gallagher claimed he moved Kunkle to SPT shortly after Kairys' termination to teach Kunkle operations so that he could become a better salesman. *Id.*; 484a, lines 7-14. According to Gallagher, if an employee does not know operations, he cannot sell. *Id.*; 483a, lines 19-24. However, Gallagher claimed he did not retain Kairys in an operations capacity because he worked in sales. *Id.*; 484a, lines 15-21. As such, Gallagher "refused to apply his own logic." *Id.*

Again, the District Court found Gallagher "evasive" on the topic of whether the age and health status of employees affected the company's health insurance rates (16a). Gallagher himself offered on direct that "you accumulate how many claims you have …. And based on the age of your employees, they give you a number." *Id.*; 469a, line 18-470a, line 1. Then, on cross, he claimed that he did not testify as such, and did not know whether insurance rates were based on the age of employees and number of claims. *See id.* and 499a, lines 4-11.

Time and time again, the District Court disbelieved the sole decision-maker with respect to Kairys' termination. It also explained *why* it did not believe him. As such, its findings cannot be clearly erroneous.

### b. The District Court believed that CEO Gallagher was upset about the cost of Kairys' surgery.

Kairys testified that CEO Pat Gallagher's brother, Vice President of Operations Bob Gallagher, told him that his brother was upset about the cost of his surgery, and advised him to "lay low."[5] (7a ¶10; 320a, lines 3-16). Both Gallaghers denied saying this, but the District Court found Kairys' testimony credible. *Id.*

The District Court specifically noted, "After observing each witness's demeanor and comparing their statements with other evidence submitted, the Court finds that Kairys is more credible on this point" (13a). As the Supreme Court has cautioned, "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575. Therefore, the District Court did not commit clear error in believing Kairys over the Gallaghers.

---

[5] With no legal analysis whatsoever, SPT claims this testimony was "clearly hearsay" (Appellant's Brief at 23). However, the District Court concluded that VP Bob Gallagher spoke within the scope of his employment on this matter, such that his comment was a statement of an agent of an opposing party, and therefore not hearsay, pursuant to Fed. R. Evid. 801(d)(2)(d). *See* ECF 116; *see also* 152a-161a. SPT does not even begin to explain why the statement of a Vice President of Operations, relaying a statement from the CEO about costs, would not fit within Rule 801(d)(2)(D).

### c. The District Court appropriately drew reasonable inferences from circumstantial evidence about the health insurance invoices.

While SPT claims its health insurance invoices provide "no identification of any employee or the medical service provided, or any other information that could lead to any retaliatory inference about Kairys," the District Court found otherwise. *Contrast* Appellant's Brief at 25 *with* 16a-17a.

Essentially, SPT contends that the District Court could not conclude that the invoices referred to Kairys without direct evidence. If SPT had its way, the District Court would not be able to consider anything short of an admission from Gallagher that he directed someone to highlight Kairys' insurance expenses shortly before May 1. *See* Appellant's Brief at 25-27.

However, recognizing that employers rarely admit violations of the law, this Court and the Supreme Court have consistently allowed discrimination and retaliation to be inferred through circumstantial evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000)("[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive"); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989)(O'Connor, J., concurring)("the entire purpose of the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by"); *Dewitt v. Penn-Del Directory*

*Corp.*, 106 F.3d 514, 523 (3d Cir. 1997)("in most cases … 'smoking gun' evidence of specific intent to discriminate does not exist. As a result, the evidentiary burden in these cases may also be satisfied by the introduction of circumstantial evidence"). As such, Gallagher was not required to admit that he saw the invoices, nor that he considered them, for Kairys to prevail.

Here, sufficient circumstantial evidence exists to support the District Court's findings that Gallagher was aware of Kairys' past and planned future use of ERISA benefits, and that he held that use against Kairys in firing him. The Court specifically noted the following: (1) SPT kept invoices with a single line, "SP01," highlighted for each week; (2) the employees were listed using codes beginning with "P," "S," and "SP;" (3) Gallagher had companies starting with these letters: PGT, Sudbury, and Southern Pines, *see* 592a; (4) only 20 employees used the UPMC plan at issue; (5) SPT only had three employees total; and (6) the week of December 10-17, shortly after Kairys' surgery, showed an increase in expenses. *See* 16a-17a. From these facts, the Court concluded, "it would not have been difficult to identify 'SP01' as Mr. Kairys and parse his expenses" (17a).

The inference that "SP01" was Kairys is the precise type of inference that a factfinder is permitted to draw from circumstantial evidence. Notably, SPT failed to offer any other reason why "SP01" was highlighted on every page of Trial Exhibit

7. Nor did it deny that Kairys' surgery expenses were the plan's highest expenses over a six-month period. As such, this inference was eminently reasonable.

The District Court further noted Gallagher's testimony that he examined health care costs on an annual basis (17a; 500a, lines 7-20). Vargo testified that the plan year ran from May 1 to May 1 (17a; 575a lines 8-12). "From this timeline, the Court [drew] the reasonable inference that Pat Gallagher and Mr. Vargo would have reviewed medical costs near the end of the benefit year as an annual summation" (17a). This was an entirely reasonable inference from the facts, and falls far short of being clearly erroneous.

### 3. The District Court's legal conclusions were supported by the evidence.

The evidence here was of the precise type that this Court has routinely held could lead a reasonable factfinder to find discrimination or retaliation. Specifically, the District Court relied on evidence of pretext, timing, antagonism, and other circumstantial evidence in concluding that SPT fired Kairys in retaliation for his past use of ERISA benefits, as well as to prevent his future use of benefits.

ERISA Section 510 prohibits both interference with the right to future benefits, as well as retaliation for having used such benefits. *See* 29 U.S.C. § 1140. Here, Kairys alleged both interference and retaliation. *See* 9a; 721a. The District Court found that the evidence for both claims overlapped, and analyzed them together (11a).

To prevail on an interference claim, Kairys must show "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir. 1990). With respect to his retaliation claim, he must show protected activity, an adverse employment action, and a causal connection between the two. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)(setting forth the elements of a Title VII retaliation claim); *Lichtenstein v. UPMC*, 691 F.3d 294, 302 (3d Cir. 2012)(setting forth the elements of a FMLA retaliation claim).[6] Given that SPT did not, and could not, dispute that Kairys engaged in protected activity and that he was discharged, the only dispute was whether Kairys proved a causal connection between his use of benefits and his termination. *See* 9a.

Under both claims, if Kairys proved that SPT's proffered reason was pretextual, the District Court was permitted to infer that SPT was motivated by a specific intent to interfere with the attainment of ERISA benefits, and/or to retaliate for the exercise of past benefits. *See DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000)(interference claim); *Kowalski*, 82 F.2d at 1289 (retaliation claim). Here,

---

[6] This Court does not appear to have explicitly identified the elements of a *prima facie* case for ERISA retaliation claims. However, it has recognized that the *McDonnell Douglas* burden-shifting framework applies to such claims. *See Kowalski v. L&F Prods., Inc.*, 82 F.2d 1283, 1289 (3d Cir. 1996).

the District Court identified **six** separate ways that SPT's asserted reason of a position elimination was pretextual, *see* 11a-15a, and at least another **two** additional types of evidence of causation, *see* 15a-18a. As set forth below, the District Court's reliance on every one of these factors is supported by the law.

### a.  The District Court found SPT's reasons implausible.

In the oft-cited *Fuentes* decision, this Court held that evidence of pretext includes evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Here, the District Court noted at least three reasons that SPT's explanation was implausible: (1) Kairys was not hired for a temporary assignment, but then was fired only two years after being personally recruited;[7] (2) SPT's bonus plan showed that "full utilization" of trucking leases varied, and as such, "it is not plausible that reaching full utilization any given month would lead Pat Gallagher to decide – that same month – that there would be no more work for Kairys to do"; (3) Gallagher testified that an alleged shortage of drivers factored into his decision to discharge

---

[7] SPT notes that it never argued at trial that Kairys' job was intended to be temporary (Appellant's Brief at 29). While SPT technically never said those words, it claimed to have fired Kairys because there was no work left for him to do, *see id.* at 11, suggesting a temporary arrangement.

Kairys, but then changed his story on cross-examination. *See id.* at 11a-12a. In other words, the District Court found SPT's reason "unworthy of credence." *See Fuentes*, 32 F.3d at 765.

### b. The District Court found SPT changed its reason.

Additionally, this Court has routinely held that a change in the employer's proffered reason is evidence of pretext. *See, e.g., Abramson v. Wm. Patterson Coll. of NJ*, 260 F.3d 265, 284 (3d Cir. 2001); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir. 1998). Here, the claimed shortage of drivers was also a changing reason, raised for the first time at trial. *See* 12a.

### c. The District Court found evidence of antagonism.

This Court has recognized that a change in demeanor, or evidence of antagonism toward an employee, can be evidence of retaliation. *See Farrell*, 206 F.3d at 285; *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302-03 (3d Cir. 2007). Moreover, evidence of a retaliatory mindset "may manifest itself in the presence of the victims or behind their backs." *Moore v. City of Phila.*, 461 F.3d 331, 345 (3d Cir. 2006).

Here, the District Court found that Gallagher became upset about the cost of Kairys' hip surgery (7a, ¶10). Gallagher admitted he was upset after the surgery, but claimed it was because he did not know where Kairys was (463a line 16-465a line 7). The District Court rejected this explanation as not credible, noting that Gallagher

was not Kairys' direct supervisor and was not involved in SPT's day-to-day operations (12a). Notably, VP Bob Gallagher testified that SPT was not even located in the building where CEO Pat Gallagher claimed he was looking for Kairys at the time of his surgery. *Contrast* 498a, lines 4-12 *with* 553a, line 18-554a, line 5. Instead, the Court believed Kairys that VP Gallagher said his CEO brother was upset about the cost of the surgery (13a). As noted above, this credibility determination was the District Court's to make. From this determination, the District Court properly found that Gallagher's attitude about Kairys changed following his surgery.

> ### d. The District Court found evidence of deviation from standard procedure.

This Court has repeatedly held that acting inconsistently from a standard practice can be evidence of discrimination. *See, e.g., Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 434 (3d Cir. 1997); *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1423 (3d Cir. 1991)(*en banc*).

Here, the District Court found that the procedure of Kairys' termination was unusual (13a). Gallagher made the termination decision unilaterally, which he had only ever done in the past when an employee engaged in misconduct or had poor performance. *Id.* While Human Resources typically issued termination letters, Kairys did not receive one (343a, lines 19-20; 451a, lines 15-18; 490a, lines 19-21). From this evidence, the District Court properly disbelieved SPT's proffered reason.

### e. The District Court found evidence of discrimination in SPT's subsequent hiring of Kyle Kunkle.

When an employer treats an employee outside the protected class more favorably, this can be evidence of discrimination. *See, e.g., Fuentes*, 32 F.3d at 765. When a unique position is eliminated, the incumbent in that position can show more favorable treatment by demonstrating that his remaining responsibilities were transferred to persons outside the protected class. *See Torre v. Casino, Inc.*, 42 F.3d 825, 830-31 (3d Cir. 1994); *Mahler v. Community Coll. of Beaver County*, 43 F. Supp. 3d 495, 509 (W.D. Pa. 2014). Relatedly, a factfinder can find discrimination when an employer assigns half of an employee's former job duties to an employee outside the protected class, while leaving the other half unfilled for a time. *See Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496-97 (3d Cir. 1995).

Here, less than two months after discharging Kairys, SPT hired Kyle Kunkle, whose duties partially overlapped with Kairys', and who was hired so a third "warm body" would be in the office (14a-15a). From this evidence, the District Court appropriately found that SPT's "subsequent staffing decisions undermine[d] its assertion that Kairys was no longer needed" (14a).[8]

---

[8] Contrary to SPT's contention, neither Kairys nor the District Court contended that Kunkle formally "replaced" Kairys. *See* Appellant's Brief at 33. Rather, the District Court found that Kunkle's assumption of some of Kairys' duties undermined SPT's asserted reason for termination; a permissible conclusion as set forth in the cases cited above.

## f. The District Court properly found that SPT attributed rising healthcare costs to Kairys.

Other courts have identified evidence of a specific intent to violate ERISA when a self-insured employer is concerned about rising health insurance premiums, and attributes rising costs to a specific employee or beneficiary. *See Trujillo v. PacifiCorp,* 524 F.3d 1149, 1156, 1160 (10th Cir. 2008); *Stein v. Atlas Indus., Inc.*, 730 Fed. Appx. 313, 320, 323 (6th Cir. 2018); *Hirsch v. National Mall & Service, Inc.,* 989 F. Supp. 977, 984 (N.D. Ill. 1997). This Court should similarly so hold, given the clear relevance of this type of evidence to an employer's intent to interfere with ERISA benefits and/or to retaliate for the use of those benefits.

Here, the District Court permissibly drew the inference that SPT highlighted Kairys' insurance expenses on invoices over a six-month period. *See* 16a-17a. Just as this Court has held that notations of employees' ages on a document listing employees for a reduction in force could be relevant evidence of age discrimination, so too should this Court hold that highlighting an employee's use of ERISA benefits is relevant evidence of ERISA interference and retaliation. *See Armbruster v. Unisys Corp.*, 32 F.3d 768, 783-84 (3d Cir. 1994)(partially abrogated on other grounds by *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009)).

The District Court further noted that Gallagher chose a self-insured plan for the express purpose of keeping insurance costs down (15a), and that he demonstrated awareness that the age and health status of his employees would affect health

insurance costs (16a). From this evidence, the District Court permissibly concluded that SPT had a specific intent to violate ERISA.

### g. The District Court identified a close temporal proximity.

When a close temporal proximity exists between an employer's awareness of a health insurance cost and a termination, a factfinder can find intent or causation. *See Kowalski,* 82 F.2d 1283; *Trujillo*, 524 F.3d at 1157-58; *cf. Farrell* 206 F.3d at 280.

Here, SPT fired Kairys just one week before the new benefit year started (17a). Gallagher testified that he reviewed health insurance costs on an annual basis. *Id.* Although almost five months had passed between the surgery itself and Kairys' termination, there was clearly very close timing between the termination and Gallagher's apparent discovery of the cost of that surgery. For purposes of the retaliation claim, the District Court found that "the termination's close proximity to the annual cost review period is evidence of a causal connection," which was bolstered by Gallagher's "change in demeanor toward Mr. Kairys," "especially because of his demonstrated priority of saving on costs" (17a). On the interference claim, the District Court found that terminating Kairys shortly before a new benefit year started "suggests a specific intent to prevent him from costing the company money again." *Id.*

For all the foregoing reasons, the District Court did not err in determining that Kairys proved, by a preponderance of the evidence, that his past and anticipated future use of ERISA benefits were determinative factors in his termination. Therefore, the judgment should be affirmed.

### C. The Jury's Age and Disability Discrimination Verdicts Did Not Preclude the District Court From Finding in Kairys' Favor Under ERISA.

As noted above, SPT failed to argue until this appeal that the District Court's ERISA determination was bound by the jury's verdict on the age and disability discrimination claims. To the contrary, SPT expressly acknowledged several times that the District Court was *not* bound by the jury's verdict and was free to disagree. *See* 741a, 744a, 746a. Indeed, the SPT characterized the jury's verdict on the age and disability discrimination claims as "persuasive" (746a). If this Court wishes to consider SPT's new argument about the preclusive effect of the jury's verdict on the merits, SPT's earlier admission that District Court was free to disagree with the jury speaks volumes.

SPT fails to cite a single case where a jury's verdict on any type of discrimination claim precluded a separate finding by a district court in an ERISA claim. Instead, SPT cites *AstenJohnson, Inc. v. Columbia Gas Co.*, 562 F.3d 213 (3d Cir. 2009), a case involving a legal claim for declaratory judgment, and an equitable counterclaim for reformation, arising under the *same* contract. *See id.* at 216-17, 227-28. There, this Court held that it was error for the district court to deny the right to a

jury trial for the declaratory judgment claim,[9] and that it was required to first try the case to a jury before making any findings on the equitable counterclaim for reformation. *Id.* at 226, 228. Given that the plaintiff's claim for declaratory judgment and the defendant's counterclaim for reformation involved the meaning of the same contract, the district court would be bound on remand by the jury's findings as to the contract's meaning. *Id.* at 228. As set forth further below, this case is nothing like *AstenJohnson* because (1) Kairys' age, disability, and ERISA claims involve different statutes with different legal standards, and (2) the jury did not make specific factual findings.

Curiously, SPT cites *Romero v. Allstate Ins. Co.*, 2016 WL 2595102 (E.D. Pa. May 3, 2016), a case that illustrates how a judge's findings on an equitable claim can permissibly vary from jury's verdict on a legal claim. *Romero* involved a group of insurance agents' challenges to a release signed in connection with a reorganization. *Id.* at *1. The jury found that some of the plaintiffs did not knowingly and voluntarily release their claims, while others did. *Id.* Then, the judge decided that no plaintiff established the equitable defenses of unclean hands and unconscionability. *Id.* The plaintiffs argued that the jury's finding of lack of a knowing and voluntary release required an equitable finding of procedural

---

[9] Here, to the contrary, the District Court did not deny the right to a jury trial on any claim.

unconscionability. *Id.* at \*3. However, another judge, reviewing the factfinding judge's decisions, held that the legal and equitable findings were not inconsistent. *Id.* at \*4. The jury found that the release for some employees was not "knowingly *and* voluntarily," without specifying whether the employer "failed on the 'knowing' prong, the 'voluntary' prong, or both." *Id.* (emphasis added). The court held, "[g]iven the **differing burdens of proof**, as well as the **lack of specificity regarding the basis for the jury's verdict**, the Court's ruling as to procedural unconscionability **does not reflect an improper disregard of factual findings by the jury on issues common to both claims**." *Id.* (emphasis added).

Like SPT here, the plaintiffs in *Romero* first argued that the court was not bound by the jury's verdict, while later claiming that it *was* indeed bound. The court held that this was "an improper attempt to advance a new theory contrary to an earlier argument," and "[p]laintiffs may not now adopt a starkly contrasting position in a Rule 52 motion to avoid an undesirable court ruling on their equitable defenses." SPT now engages in precisely the same conduct that the *Romero* court admonished. But at least the *Romero* plaintiffs raised the new argument while still at the trial court level, instead of waiting to do so until appeal.

Notably, in citing *Romero*, SPT omits a key sentence. SPT quotes, "a district court is bound both by a jury's explicit findings of fact and those facts that are necessarily implicit in the jury's verdict," while ignoring the very next sentence:

**"Where the standards of proving the legal and equitable claims differ or the precise basis of the jury's verdict is unclear, a judge and jury can reach divergent conclusions."** *Id.* at *3 (emphasis added);[10] *compare* Appellant's Brief at 41. Here, both alternatives apply: different legal standards are involved in Kairys' various claims, and the basis for the jury's verdict is unclear.

### 1. Kairys' Age, Disability, and ERISA Claims Involved Different Legal Standards.

While SPT correctly notes that the *evidence* supporting Kairys' various claims *overlapped*, this does not mean the *claims* themselves were *identical.* As this Court has noted, when elements of a legal claim and an equitable claim are "identical," "the court should be bound by the jury's determination on these issues," *but* when elements are "uniquely" part of an equitable claim, "they are ultimately a decision of the court." *Andrews v. City of Phila.*, 895 F.2d 1469, 1483 n. 4 (3d Cir. 1990)(superseded by statute on other grounds, *Moody v. Atlantic City Bd. of Edu.*, 870 F.3d 206, 214 (3d Cir. 2017)).

Here, the elements of the ERISA interference and retaliation claims were unique to those claims. ERISA prohibits, *inter alia*, discharging a plan participant

---

[10] *Romero* cites cases from three different appellate courts for this proposition, all three of which hold that a jury's verdict did not preclude a judge's allegedly contrary findings: *Caben-Wheeler v. Elsea*, 71 F.3d 837, 844 (11th Cir. 1996); *Perdoni Bros., Inc. v. Concrete Sys., Inc.*, 35 F.3d 1 (1st Cir. 1994); *Fowler v. Land Mgmt. Gp., Inc.*, 978 F.2d 158 (4th Cir. 1992). *See Romero*, 2016 WL 2595102 at *3, n. 13.

"for exercising any right to which he is entitled under the provisions of an employee benefit plan … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The ADA, on the other hand, prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to … discharge." 42 U.S.C. § 12112(a). The ADEA makes it unlawful for an employer "to discharge … any individual … because of such individual's age." 29 U.S.C. § 623(a).[11]

While the ADA and ADEA protect employees from being discriminated against because of their disability and age, respectively, ERISA protects plan participants from retaliation for exercising plan rights, as well as from interference with the future use of rights. Congress passed three separate statutes prohibiting three different types of conduct. It is entirely possible that an employee could prevail on one or more of these claims, while losing one or more of the others.

### a. An ERISA interference claim is distinct from an age or disability discrimination claim.

Kairys' claim of interference with his right to *future* benefits is in no way precluded by the jury's age and disability discrimination verdicts. The claim of interference with future benefits is a concept "unique" to ERISA. *Cf. Andrews*, 895

---

[11] The PHRA, a parallel state law, similarly prohibits employers from discharging employees "because of the age … or disability of any individual." 43 Pa. Cons. Stat. § 955(a).

F.2d at 1483 n. 4. **Nothing about interfering with the use of benefits "to which a participant may become entitled" appears in the ADA or the ADEA.** *Contrast* 29 U.S.C. § 1140 *with* 29 U.S.C. § 623 and 42 U.S.C. § 12112. Nor did anything about interference with the future use of benefits appear in the District Court's jury instructions for the age or disability claims. Kairys' status as an ERISA plan participant is separate from his status as a disabled employee or an employee over age 40.

The District Court clearly concluded that SPT fired Kairys to prevent him from using benefits in the future (9a-11a). Specifically, "Kairys's use – *and anticipated future use* – of ERISA-protected benefits played a determinative role in his termination" (11a)(emphasis added). The fact that SPT fired Kairys just a week before the new insurance plan year certainly supports a finding that SPT did so to prevent him from utilizing future benefits. As the District Court noted, "terminating Kairys shortly before a new benefit year started also suggests a specific intent to prevent him from costing the company money again" (17a). This is particularly the case given that Gallagher knew about Kairys' need for a future hip surgery (18a). Because the District Court's finding of ERISA interference is not inconsistent with the jury's verdict on the age and disability claims, the District Court did not err.

### b. An ERISA retaliation claim is distinct from an age or disability discrimination claim.

Disparate results were also possible between the ERISA retaliation claim and the ADA/ADEA claims. While SPT points out the characterization of Kairys' ADA claim as "including because of the cost of hip replacement surgery necessitated by Kairys' degenerative arthritis," an ERISA retaliation claim is not limited to the specific *cost* of a given surgery, but rather is based on the *use* of benefits at all-- regardless of cost. It also does not require the plaintiff to have a disability, let alone for a discharge to be related to that disability. *See* 29 U.S.C. § 1140 (prohibiting discharge of a plan participant "for exercising any right to which he is entitled under the provisions of an employee benefit plan"). As such, retaliation for the use of benefits is a concept unique to ERISA.

Here, SPT highlighted *all* of Kairys' uses of benefits over a 6-month period, not just the cost of his surgery. *See* 948a-998a. Therefore, SPT considered far more than just the cost of one specific ADA-protected surgery in discharging Kairys.

Moreover, even if this Court were to find the District Court's judgment of ERISA retaliation to be precluded by the jury's disability or age verdicts, any error would be harmless given the District Court's proper finding of ERISA interference. The Court analyzed the claims together, noting that "the evidence for the two claims overlaps" (11a). It further granted the same remedies of front pay and attorneys' fees with respect to both claims. *See* 19a and 24a. Because the ERISA interference

judgment, standing alone, would support the District Court's award of remedies, it is immaterial whether the District Court also correctly decided the ERISA retaliation claim.

### 2. The Precise Basis for the Jury's Verdict is Unclear.

The jury made no factual findings with respect to whether SPT was motivated by the cost of Kairys' surgery, his use of benefits, or his intended future use of benefits, in firing him. As the District Court noted, it was "difficult" to give the jury's advisory verdict "due regard" because "the jury made no specific findings of fact" (5a). Rather, the jury drew *legal conclusions* that Kairys did not prove, by a preponderance of the evidence, that his age and disability were determinative factors in his termination. These legal conclusions are separate from any *facts* that the jury, or individual members of the jury, may have believed.

For example, the jury was not asked on the verdict form questions such as: (1) "Do you believe Pat Gallagher's explanation for why he fired Kairys?"; (2) "Did Bob Gallagher tell Kairys that Pat Gallagher was upset about the cost of his surgery?"; (3) "What inferences, if any, do you draw from the highlighted 'SP01' on every health insurance invoice over a 6-month period?"; (4) "Do you find that Kyle Kunkle's job duties overlapped with Kairys' job duties?" If the jury had answered these questions, then perhaps SPT would have a point. But as it stands, all that is left are legal conclusions that Kairys did not prove age or disability discrimination.

While SPT speculates that the jury must have made credibility determinations in its favor, that is not necessarily the case. The jury could have even believed every word Kairys said, and disbelieved every word SPT's witnesses said, but still found that Kairys did not meet his burden of proving age or disability discrimination. For example, the jury may have believed that Gallagher was upset about Kairys' use of benefits, but still believed that Kairys' age or degenerative arthritis were not determinative factors in his termination. This would not preclude the Judge from finding that Kairys' use of ERISA benefits was a determinative factor in his termination.

In reaching its age and disability verdicts, the jury may have even considered things that it should not have considered. For example, CEO Gallagher blurted out that Kairys "abused his privilege of having a company car" (507a, line 11), despite SPT stipulating that it would not "introduce any evidence or argument regarding Plaintiff's alleged misuse or abuse of business expenses." *See* ECF 101 ¶10. Indeed, a member of the jury stated in a proposed question to Gallagher, "Tom abused the company car, so why didn't he terminate him over that reason?" (514a, lines 4-7), suggesting that particular juror already found as a fact that Kairys abused the car. Although the District Court later gave a curative instruction on this issue, it is possible that the jury may have determined that the "real reason" for terminating Kairys was his alleged abuse of his company car. It is also possible that the jury was

misled into believing that it could not find discrimination because SPT did not formally "replace" Kairys, despite law in this Circuit to the contrary. *See Torre*, 425 F.3d at 830-31; *Waldron*, 56 F.3d at 496-97. Notably, the District Court declined to give an instruction to the jury about the lack of necessity of a formal replacement. *See* 729a, n. 1; *see generally* 631a-636a.

It is simply unknowable *why* the jury found that Kairys did not prove age or disability discrimination. Because "the precise basis of the jury's verdict is unclear, [the] judge and jury [could] draw different conclusions." *Romero*, 2016 WL 2595102 at *3. Therefore, the District Court's judgment should be affirmed.

### D. The District Court Did Not Err in Awarding Front Pay.

As noted above, SPT never stated its position below regarding remedies, despite a request by the judge to consider briefing remedies in posttrial submissions. *See* 708a. As such, it has forfeited the right to challenge the District Court's award of front pay.

Even now, SPT does not seem to take issue with the amount or nature of the front pay award, but rather disputes that any remedies should be awarded at all. Its sole basis for this argument is that it believes it should win the ERISA claim. *See* Appellant's Brief at 43. SPT only devotes one paragraph to its challenge to remedies, without developing any legal or factual argument about why the District Court's specific award of front pay was erroneous. Therefore, SPT has waived the ability to

challenge the award of front pay with any specificity in its reply brief. *See, e.g., Hoxworth v. Blinder, Robinson, & Co., Inc.,* 903 F.2d 186, 204 n. 29 (3d Cir. 1990)("[a]s a general matter, the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief").

Therefore, should this Court affirm the District Court's finding of ERISA liability, it should also affirm the award of $67,500 in front pay.

### E. The District Court Did Not Abuse its Discretion in Awarding Attorneys' Fees.

As SPT concedes, this Court may only reverse a District Court's fee award if it committed an abuse of discretion, and may only overturn a factual finding supporting that award if it was clearly erroneous. *See* Appellant's Brief at 43. This abuse of discretion standard is appropriate because of "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983). Nonetheless, SPT presents a series of highly-specific factual arguments—most of them petty, and many unsupported by the record—in challenging the award of attorneys' fees.

#### 1. The District Court did not abuse its discretion in reducing pre-verdict fees by 25%.

The reasonableness of the District Court's fee award is illustrated by its decision to reduce Kairys' pre-verdict fees by 25%, when he requested only a 10%

reduction. *See* 89a. While Kairys and his counsel may believe that a smaller reduction was warranted under the circumstances, he did not appeal because the District Court acted within its discretion in making this reduction. Under the highly deferential standard of reviewing fee awards, so too should SPT have accepted the District Court's fee award.

In awarding attorneys' fees, the District Court properly applied the "lodestar:" a reasonable hourly rate times reasonable hours worked. *See Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 310 (3d Cir. 2008). "The product of this calculation 'is a presumptively reasonable fee, but it may still require subsequent adjustment.'" *Id.*

When a plaintiff is a prevailing party,[12] but does not win every claim, courts may adjust the lodestar fee calculation in two ways. First, the court may reduce the hours counsel spent solely on litigating unsuccessful, unrelated claims.[13] *Hensley*, 461 U.S. 434–35. This requires an evaluation of the interrelatedness of successful and unsuccessful claims. *Id.* Second, the court must address whether the plaintiff

---

[12] A plaintiff is a prevailing party if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. SPT does not appear to dispute that Kairys was a prevailing party under ERISA.

[13] Before filing the fee petition, Kairys' counsel reduced their hours for time spent solely on the unsuccessful claims. This resulted in an overall reduction of about 5%. *See* 765a ¶23.

achieved an overall level of success that makes the hours "reasonably expended a satisfactory basis for achieving an award." *Id.* at 434. Whether an unsuccessful claim is sufficiently related to a successful claim for the purposes of compensatory hours depends on whether it has the same "common core of facts" as the successful claim, or is "based on related legal theories." *Id.* at 435.

Claims share a "common core of facts" when the work performed on one claim would provide value and use for the other claim(s). *See Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 Fed. Appx. 93, 98 (3d Cir. 2006). For example, in *Eichenlaub v. Township of Indiana*, 214 Fed. Appx. 218 (3d Cir. 2007), this Court affirmed a finding that "[t]he work on the dismissed causes of action was useful and necessary" to maintain the cause of action that plaintiff ultimately won, justifying a *full* fee award. *Id.* at 221.

Here, the District Court found the evidence under ERISA, the ADA, the ADEA and, the PHRA overlapped, such that the claims shared a common core of facts.[14] *See* 89a. SPT agrees, contending "*despite* the common core of facts, the court should have reduced the fee request further…" (Appellant's Brief at 49)(emphasis added). Given this concession, the District Court's finding of a common core of facts cannot be clearly erroneous.

---

[14] For a discussion of the overlapping nature of the evidence for each claim, *see* 850a-851a, 853a-855a.

Rather, SPT's request for a lower award seems to be based on the amount of monetary recovery that Kairys recovered relative to what he sought. *See id.* However, the District Court already considered this issue in reducing the fee by 25%. *See* 89a (reducing fees because Kairys sought back pay, higher front pay, and compensatory damages). SPT offers nothing more than its own opinion that this reduction was not enough.

SPT cites no authority for its contention that the "award should be adjusted downward by at least 40%." *See* Appellant's Brief at 49. It does not reference a single case in which any court held that a lower court abused its discretion by not reducing a fee award *enough* when a plaintiff prevailed on some claims, but lost others. The request for a 40% reduction seems to be arbitrary, and certainly is not mandated by any precedent of this Court or the Supreme Court. Given the significant discretion afforded to the District Court in determining an appropriate reduction, its award should not be disturbed.

### 2. The District Court did not abuse its discretion in declining to reduce fees for ERISA briefing.

Citing no authority whatsoever, SPT contends that the District Court's decision to award approximately $6,000 in fees for post-trial briefing of the ERISA claim was a "manifest abuse of discretion and error of law" (Appellant's Brief at 50). However, as the District Court noted, Kairys was successful on his ERISA claim and in all other post-trial work. *See* 89a-90a.

The record belies SPT's assertion that both parties briefed the ERISA claim at Kairys' counsel's "insistence" (Appellant's Brief at 50). Rather, counsel merely asked if the Judge wanted briefing before deciding the ERISA claim, to which he responded, "I would accept briefing," and specifically suggested that the parties brief remedies[15] (708a). At no time did SPT object or otherwise express any resistance to filing a brief. To the contrary, the Parties submitted a **Joint** Notice Regarding Post-Trial Submissions in which they agreed to submit simultaneous ERISA briefs (717a-718a). SPT indeed filed a twelve-page brief opposing Kairys' ERISA claim and urging the Court to adopt the advisory jury's verdict (740a-751a). Now, SPT complains that not only should Kairys' counsel not be paid for their *successful* brief, but also should not even be compensated for reviewing SPT's *unsuccessful* brief. This Court should reject this bad faith argument.

### 3. SPT's specific challenges to fees and expenses are unfounded.

SPT engages in a host of additional attacks on the District Court's award of fees, all of which were within its discretion.

### a. Counsel's time entries were sufficiently detailed.

The District Court found that Kairys' counsel's billing entries were "sufficiently specific and detailed to support the fee award requested" (44a-45a).

---

[15] While no brief was technically *required*, SPT can hardly claim Kairys' ERISA Brief did not contribute to his success.

SPT takes issue with 2.3 hours of work that counsel spent reviewing documents, contending that the time entries do not reflect *which* documents counsel reviewed. SPT fails to cite a single case requiring billing entries to list the Bates stamp number of every document or the precise number of pages reviewed. As such, the District Court did not abuse its discretion.

### b. Work related to Kyle Kunkle was compensable.

In perhaps its most frivolous challenge in this entire appeal, SPT contends that Kyle Kunkle's testimony "had nothing to do with the successful ERISA claim" (Appellant's Brief at 45). However, SPT's decision to hire Kunkle less than two months after Kairys' termination played a key role in the District Court's finding of ERISA liability. *See* 8a at ¶14; 14a-15a. The repeated references to Kunkle in the District Court's opinion and this Brief are sufficient to dispense with this argument.

### c. Counsel's work was not unreasonably duplicative.

SPT contends that counsel performed approximately $4,500 worth of duplicative work (Appellant's Brief at 47), which was already reduced by 25% to about $3,375. A reduction for duplication "is warranted only if the attorneys are *unreasonably* doing the *same* work." *Rode v. Dellacripete*, 892 F.2d 1177, 1187 (3d Cir. 1990). Thus, to warrant a reduction, work by more than one attorney must be reduced only if it is (1) unreasonable and (2) the same. *Id.* SPT does explain why approximately nine hours of lead counsel work, or six hours of associate counsel

work, on jury instructions is unreasonable or the same. As such, SPT cannot show that the District Court abused its discretion in awarding (reduced) fees for this time.

### d. No further reduction is warranted for the expense subclaim.

Kairys' WPCL and breach of contract claims originally sought reimbursement of expenses in the amount of $1,707.16. *See* ECF 1 at ¶¶ 24, 25, 57, 60. Kairys withdrew this item of damages at the close of discovery, before any summary judgment briefing began. *See* ECF 43 at ¶¶2-3. Kairys' counsel already reduced to zero certain time entries related to this subclaim and its withdrawal. *See* highlighted entries at 803a-805a. SPT has not identified any other time entries that would not have been incurred without this very minor part of this claim. The District Court did not abuse its discretion in failing to reduce the award further.

### e. The District Court did not abuse its discretion in awarding expenses.

SPT's objections to the award of litigation expenses fare no better. Most of its objections again relate to Kunkle. Additionally, it challenges the award of a $400 filing fee as inadequately documented, despite record evidence—and confirmation on the docket—that the filing fee was paid. *See* 28a, 828a.

As with fees, the District Court thoughtfully considered its award of litigation expenses. It even declined to reimburse Kairys for his share of a mandatory alternative dispute resolution proceeding, despite no objection from SPT, and stuck

to that decision on reconsideration. *See* 46a and ECF 151, 152, 155, 157. As such, the District Court cannot be said to have abused its discretion.

### 4. An award of fees was appropriate under the WPCL and contract claims.

SPT incorrectly contends that if Kairys lost his ERISA claim, he would be entitled to no fees at all (Appellant's Brief at 12-13, 44-45). In so arguing, SPT ignores that Kairys also prevailed on his fee-shifting wage claims under the WPCL and for breach of contract. SPT has not even appealed the judgment as to those claims.

An award of attorneys' fees under the WPCL is mandatory. *See* 43 Pa. Stat. § 260.9a; *Oberneder v. Link Computer Corp.*, 674 A.2d 720, 722 (Pa. Super. Ct. 1996). Moreover, the contract under which Kairys prevailed had a fee-shifting provision. *See* 864a. Kairys fully briefed his entitlement to fees under these claims before the District Court, including their overlap with the termination-based claims, and the significant effort required to prevail. *See* 856a-865a.

In awarding fees, the District Court held "its assessment of an appropriate fee award is the same whether made pursuant to ERISA, the WPCL, or the contract" 44a, n.1. The District Court did not apportion which part of the fee award was attributable to the ERISA judgment as opposed to the wage-based judgment. As such, even if this Court reverses the ERISA judgment, it should remand the case for reconsideration of the fee award under the WPCL and the contract.

## VI. Conclusion

For the foregoing reasons, SPT has failed to identify any reversible error by the District Court. Therefore, Kairys respectfully requests that the judgment of the District Court, as well as its Order awarding attorneys' fees, be affirmed.

Respectfully submitted,

**ELZER LAW FIRM, LLC**

/s/ Christine T. Elzer
Christine T. Elzer
Pa. I.D. No. 208157
Tamra Van Hausen
Pa. I.D. No. 330577

100 First Avenue
Suite 1010
Pittsburgh, PA 15222
(412) 230-836

Attorneys for Appellee

## **Certification of Bar Membership**

I certify that I am a member of the Bar of the U.S. Court of Appeals for the

Third Circuit.

/s/ Christine T. Elzer
Christine T. Elzer

## **Certificate of Compliance with Fed. R. App. P. 32(g)**

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(g) because it contains 12,957 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font, Times New Roman.

/s/ Christine T. Elzer
Christine T. Elzer

## **Certificate of Virus Scan**

I hereby certify a virus scan was performed on this Brief prior to electronic filing using Microsoft Defender virus software.

/s/ Christine T. Elzer
Christine T. Elzer


## **Certificate of Identical Copies**

I hereby certify the text of the electronic brief and the hard copies are identical.

/s/ Christine T. Elzer
Christine T. Elzer

## Certificate of Service

I, hereby certify that on this 13th day of December, 2022, a true and correct copy of the foregoing *Appellee's Brief* was electronically filed with the Court, with a copy served upon the following counsel via ECF:

Audrey Jacobsen Copeland
Marshall Dennehey
620 Freedom Business Ctr., Ste. 300
King of Prussia, PA 19406

/s/ Christine T. Elzer